UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHANDRA M.[1]
FORMERLY KNOWN AS CHANDRA J.,

      Plaintiff,

v.                CASE # 1:19-CV-00744

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER<br>  Counsel for Plaintiff<br>6000 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ.<br>SAMANTHA VENTURA, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ANGELA GAIL<br>THORNTON-MILLARD, ESQ.<br>FRANCIS D. TANKARD, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

  The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on April 5, 1973 and has less than a high school education. (Tr. 173, 178). Generally, plaintiff's alleged disability consists of chest pains, hard time breathing, asthma, congestive heart failure, partial blindness, back issues, arthritis in bilateral legs, trouble walking, chronic pain with burning/swelling, and slow learner. (Tr. 177). Her alleged onset date of disability is May 3, 2015. (Tr. 173).

   B.  **Procedural History**

On May 11, 2016, plaintiff applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (Tr. 158). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On July 10, 2018, plaintiff appeared before the ALJ, Bryce Baird. (Tr. 28-54). On September 6, 2018, ALJ Baird issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 7-23). The Appeals Council (AC) denied plaintiff's request for review and plaintiff then filed a civil action in this Court seeking judicial review of the Commissioner's decision.

   C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since May 11, 2016, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity; arthritis; chronic obstructive pulmonary disease (COPD); and asthma. (20 CFR 44.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and carry up to 20 pounds frequently and 10 pounds occasionally. She can sit about 6 hours in an 8-hour workday and stand and/or walk about 6 hours in an 8-hour workday. The claimant can frequently climb ramps and stairs, balance, and stoop. She can occasionally kneel and crouch. She cannot crawl. The claimant cannot be exposed to excessive cold, heat, moisture, or humidity. She can occasionally be exposed to irritants, such as, odors, fumes, dusts, gasses, and poor ventilation and includes smoking 2 packs of cigarettes per day.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on April 5, 1973 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education in special education classes and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 11, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 7-22).

## II.　THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.　Plaintiff's Arguments

Plaintiff argues the ALJ ignored evidence of plaintiff's borderline intellectual functioning, which resulted in an unsupported RFC. (Dkt. No. 10 at 7 [Pl.'s Mem. of Law]).

### B. Defendant's Arguments

Defendant responded that the ALJ accounted for the alleged impairments and reasonably developed the record. (Dkt. No. 12 9 [Def.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an

analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

Plaintiff argues the record contained a prior finding she suffered from a cognitive impairment which in turn put the ALJ "on notice" and he was required to further develop the record

5

in this area. For the reasons outlined below, the ALJ properly evaluated plaintiff's mental impairments and associated limitations. The record before the ALJ was complete and he was not obligated to further develop the record concerning cognitive impairments.

Plaintiff argues the ALJ failed to consider evidence in the record of borderline intellectual functioning. (Dkt. No. 10 at 7). The current record contains a 2010 unfavorable SSI decision which was admitted into evidence with no objections from plaintiff's representative. (Tr. 31, 58-67). In that decision, the ALJ found the severe impairment of borderline intellectual functioning which was based on a Full Scale IQ score of 70 from a 2009 Consultative Exam and school records containing low IQ scores. (Tr. 64). The prior ALJ concluded plaintiff did not meet a listing and retained the ability to perform simple, routine, repetitive tasks. (Tr. 61-62).

As an initial matter, an ALJ is not bound by a prior administrative finding and a claimant has the general burden of proving her case at steps one through four in each new application. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). The regulations provide that the ALJ is responsible for developing a claimant's complete medical history for at least the 12 months preceding the month in which the claimant filed her application and make every reasonable effort to help plaintiff get medical evidence from her medical sources. 20 C.F.R. § 416.912 (b)(1). Additionally, the ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018).

At the time of her application, plaintiff stated she was a "slow learer (sic)" but never provided any evidence of cognitive limitations. (Tr. 177). Notably, plaintiff was represented by counsel at the time of application and completed the SSI application[2]. (Tr. 83, 184). On the same

---

[2] Notation on Form SSA-3368: "SSI application will be completed by Law Offices of Kenneth Hiller and Forwarded to Local SSA with our attorney paperwork via certified mail." (Tr. 184).

initial paperwork completed by her attorney's office, the education section reports she went to Lafayette High School/Grover Cleveland High School but in additional remarks it states, "I went to more than one: special education school." (Tr. 176, 184). At the hearing, the ALJ asked plaintiff's counsel what impairments cause plaintiff to be disabled and she responded "arthritis, degenerative spondylosis, COPD, migraine, left knee degenerative joint disease, anemia, osteoarthritis of the ankle, neuropathy, ocular hypertension, cataracts, and PTSD." (Tr. 33).

Although ALJ Baird did not find plaintiff had a severe cognitive impairment at step two, the ALJ discussed evidence in the record of plaintiff's allegations of being a slow learner, additional mental impairments, and associated limitations supported by the record. (Tr. 14-15). He observed that the evidence revealed normal mental status examinations and frequent denial of any psychiatric symptoms. (Tr. 15). At step three, the ALJ discussed the special paragraph B criteria for mental impairments and concluded plaintiff had a mild limitation in the functional area of understanding, remembering or applying information. (*Id.*) The ALJ asserted there were no school records to confirm plaintiff's report of special education classes and inability to finish her GED; however, he gave "the claimant the benefit of the doubt that this information is correct." (Tr. 15). He noted plaintiff admitted to no problems following instructions and attributed problems with maintaining attention and completing tasks to her back and leg pain. (Tr. 16). The ALJ also considered plaintiff's testimony that she did not need reminders to engage in personal care activities or taking her medications. (*Id.*). In other functional areas of the paragraph B criteria, the ALJ referenced plaintiff's ability to watch television, listen to the radio, read books, draw, play games on her cell phone, cook simple meals, and shop with only physical limitations. (Tr. 16). However, the ALJ did elicit testimony about education levels and plaintiff's counsel asked if she had been in special classes. (Tr. 41). *See* 20 C.F.R. § 416.920(b)(2)(iv) (the ALJ may develop the

7

record by asking the claimant for more information about her impairment(s)). When addressing plaintiff's allegations of being a slow learner, the ALJ found there were no school records or other evidence submitted by plaintiff or her representative to support the allegation. (Tr. 13). The ALJ correctly observed *plaintiff did not submit* any school records or other evidence to support the allegation of being a slow learner; however, the record did contain the prior 2010 decision which referenced IQ testing and school records. (Tr. 13, 55).

Plaintiff's "on notice" argument regarding the 2010 decision effectively shifts to the ALJ the task of developing the record on the issue of borderline intellectual functioning as an impairment. (Dkt. No. 10 at 8). However, as stated above, "'the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four[.]'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2nd Cir. 2014) (quoting *Burgess*, 537 F.3d at 128).

Neither the claimant plaintiff, her representative, nor any treating medical providers, indicated plaintiff had a cognitive impairment or associated limitations. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."). Plaintiff did not submit additional evidence of cognitive limitations and it was not raised at the hearing, at the Appeals Council level, or before this Court. *Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 44 (2d Cir. 2020) (ALJ did not fail to develop the record where ALJ discussed the medical records with plaintiff's attorney, attorney did not state anything needed to be obtained, and attorney did not submit records to district court). This Court has previously found an ALJ is not required to obtain additional information when the claimant "did not specifically allege impairment of cognitive functioning as a disabling condition in his application for benefits, at his hearing, or in his brief to the Appeals Council" and no medical

source indicated the claimant's cognitive functioning was a significant factor in his ability to perform work activities. *Oaks v. Colvin*, No. 13-CV-917-JTC, 2014 WL 5782486 at *9 (W.D.N.Y. Nov. 6, 2014) (transcript citations omitted).

Contrary to plaintiff's argument, the prior decision was not under the sole control of the ALJ. (Dkt. No. 10 at 10). Plaintiff and her attorney had access to the record prior to the hearing, including the 2010 ALJ decision; however, they never raised the issue of borderline intellectual functioning until before this Court. The ALJ appropriately considered the plaintiff's case *de novo* and it is routine that prior decisions are often included in the record. Plaintiff did not ask for a re-opening of the previous application and did not object to the inclusion of the prior decision in the record. (Tr. 31-32). Plaintiff's attorney stated at the hearing that the only outstanding records pertained to cardiology treatment. (Tr. 32). Therefore, Plaintiff's argument fails.

Although plaintiff contends the duty to develop the record is lessened because of her cognitive issues, she is not relieved of a duty to raise issues or allege limitations related to intellectual problems, particularly when represented by counsel. Plaintiff alleged that problems with attention, concentration, or completing tasks were due to her physical, not cognitive, impairments. (Tr. 16). *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff bears the burden of proving a more restrictive RFC); *see Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

Finally, plaintiff asserts Listing 12.05 should have been considered solely because of the full-scale IQ score of 70. (Dkt. No. 13 at 2). However, a score alone is not sufficient to satisfy the listing. There also must be significant deficits in adaptive functioning. *See Talavera v. Astrue* 697

F.3d 145 (2d Cir. 2012)(while IQ scores in the range specified by the subparts of Listing 12.05 may be prima facie evidence that an applicant suffers from "significantly subaverage general intellectual functioning," the claimant has the burden of establishing that she also suffers from qualifying deficits in adaptive functioning.). ALJ Baird assessed the four broad areas of mental functioning under the paragraph B criteria for the alleged mental impairments and found only a mild limitation in understanding, remembering or applying information and no limitation in interacting with others or concentrating, persisting or maintaining pace or adapting or managing oneself. (Tr. 15-16).

Overall, the RFC was supported by substantial evidence without consideration of the alleged borderline intellectual functioning. The ALJ properly relied on plaintiff's activities, hearing testimony, and medical records when assessing the RFC. Plaintiff had a duty to prove a more restrictive RFC and failed to do so. Here, plaintiff has only argued there is an IQ score of 70 but did not furnish the ALJ with any medical evidence showing how the alleged intellectual impairment limited her ability to work. *See Britt v. Astrue,* 486 F. App'x 161, 163 (2d Cir. 2012).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

**GRANTED**.

Dated: July 16, 2021　　　　　　　　　　　　　　*J. Gregory Wehrman*
Rochester, New York　　　　　　　　　　　　　HON. J. Gregory Wehrman
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge